## 70153. JEROME BRADFORD CONSTRUCTION COMPANY, INC. v. PINKERTON & LAWS COMPANY.

(332 SE2d 26).

POPE, Judge.

This appeal comes from a grant of summary judgment by the trial court to appellee The Pinkerton and Laws Company (Pinkerton). As a general contractor, Pinkerton undertook construction of a terminal for Roadway Express. Appellant Jerome Bradford Construction Company, Inc. (Bradford) had a subcontract with Pinkerton on the project under which it agreed to do the clearing, grading and fill work. The action below was instituted by Rhodes Oil Company, Inc. against both Pinkerton and Bradford. Rhodes Oil was a materialman who had supplied petroleum products to Bradford while Bradford was engaged on the project. After discovery Pinkerton moved for summary judgment regarding the claims made against it in the main action by Rhodes Oil, and for the claims against it in the cross-claim by Bradford. The trial court granted Pinkerton's motion for summary judgment regarding both Rhodes Oil and Bradford. Rhodes Oil did not appeal the summary judgment against it; Bradford did. Still pending in the trial court below are the claims of Rhodes Oil against Bradford, and the claims of Pinkerton in its cross-claim against Bradford. *Held*:

In its cross-claim against Pinkerton, Bradford alleges that Pinkerton breached the subcontract by refusing to allow a change order to the contract based upon an alleged material change in the condition of the construction site. In essence, the material change was the amount of rain which fell over several months which made achievement of the contract specifications more difficult and more expensive. We will set out the pertinent findings of the trial court in regard to the dispute in narrative form, omitting the trial court's paragraphing and using our abbreviations.

"Under the subcontract agreement between Pinkerton and Bradford, Bradford agreed to furnish and supply all the necessary labor, materials, tools, equipment and supervision to clear, grade and fill the site, and to install complete sanitary sewer and storm drainage systems. The specifications pertaining to the placement of fill material — which were incorporated into the subcontract agreement — required the fill material to be compacted to a 'minimum density of ninety-five percent (95%) of maximum laboratory dry weight as determined by AASHTO Test Designation T-180 (modified proctor).' Compaction of fill material to a standard of ninety-five percent (95%) modified proctor density is substantially more difficult to achieve than compaction of fill material to a standard ninety-five percent (95%) standard proctor density. Although the subcontract specifications stated that the applicable standard was ninety-five percent

(95%) modified proctor, Bradford submitted its bid and entered into the subcontract agreement without any of its representatives having read the specifications.

"Bradford commenced work in November of 1981 and initially achieved the requisite degree of compaction in performing the fill work. However, it encountered substantially greater difficulty in achieving the requisite degree of compaction in the early spring of 1982 as the result of additional rains which occurred during this period of time. The Purchase Order executed by Pinkerton and Bradford — which was made part of the subcontract agreement — provided that 'all subsurface soil conditions are the responsibility of the subcontractor as it relates to his work described above.' The subcontract specifications provided in part: that Bradford was required to visit the site, inform itself of the conditions and make its own estimate of the facilities and difficulties attending the execution of the work; that the material for the fill work would consist of the material found on the site; that it would have no claim for any extra payment due to the nature of the material to be excavated; and that the fill material was to be compacted at the optimum moisture content plus or minus three percent (3%), and the moisture content of each lift was to be adjusted by either aeration (to dry the material) with a disk harrow or sprinkling as might be necessary to facilitate proper compaction." The record further shows that the subcontract called for Bradford to finish the work by February 1982. In July 1982, with the work substantially incomplete, Bradford abandoned the job site and refused to complete the work as specified in the subcontract. After a careful examination of the record before us, we find the findings of fact set out above to be supported by the record.

From these facts, the trial court concluded that the responsibility for subsurface conditions and the obligation to aerate the fill material in order to arrive at optimum moisture for compaction was specifically imposed upon Bradford by the agreement. We agree. The trial court also found that the contract did not provide a "change of condition" clause. For these reasons the trial court concluded that Pinkerton could not be liable to Bradford under the agreement. We find that the trial court was correct in granting summary judgment to Pinkerton.

"Parties laboring under no disabilities may make contracts on their own terms, and in the absence of fraud or mistake or terms that are illegal or contrary to public policy, they must abide [by] the contract. The fact that it is unwise or disadvantageous to one party furnishes no reason for disregarding it." *Yon v. City of Atlanta*, 201 Ga. 800, 804 (41 SE2d 516) (1947). Bradford argues that the rain made it "economically impossible" for it to comply with the contract specifications. Yet there is evidence that its president stated that had the

contract called for the lesser standard of 95% standard proctor density rather than 95% modified proctor density, Bradford could have met the requirements easily. There is also evidence that Bradford entered into the agreement without full knowledge of the requirements of the job. The basis for Bradford's claim against Pinkerton is that Pinkerton did not allow a modification of the contract. Yet, as the trial court found, the contract does not place any obligation upon Pinkerton to allow such a change. This fact, coupled with the circumstance that the job proved more difficult than anticipated, affords no basis for recovery by Bradford against Pinkerton.

The remaining enumerations of error by Bradford deal with findings of fact made by the trial court which relate to damages alleged by Pinkerton in its cross-claim. In its brief, Pinkerton concedes that the issue of damages remains to be proved in the action still pending below. In any case, such findings are not relevant to the trial court's decision granting summary judgment to Pinkerton on Bradford's cross-claim. Therefore, such issues remain to be decided in the pending action and need not be addressed by this court in this appeal.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED MAY 23, 1985.

*Richard E. Collar, Jr., Alan B. Gordon,* for appellant.
*Jones Webb, Peter M. Degnan,* for appellee.